STATE OF NEW YORK
SUPREME COURT            COUNTY OF WESTCHESTER

**BDRN, LLC, BDRN PHARMACY, LLC, and JOHN DOE,**

       *Plaintiffs,*

   -*against*-

**UNITEDHEALTHCARE OF NEW YORK, INC., UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK, and OPTUMRX, INC.**

       *Defendants.*

**AFFIDAVIT OF NELSON ESCOTO**

Index No.

STATE OF NEW YORK  )
          ) ss.:
COUNTY OF WESTCHESTER )

NELSON ESCOTO being duly sworn, deposes and says:

1. I submit this affidavit in support of the application for an Order to Show Cause seeking a temporary restraining order, preliminary and permanent injunction requiring Defendants to allow BDRN to participate in Defendant United's Specialty Pharmacy Network for Pharmacy Benefit and enjoining and restraining the Defendants from other conduct complained of herein.

2. I am one of three Co-Presidents of Plaintiff BDRN, LLC ("BDRN-NJ"), "), located in Riverdale, New Jersey and which is a pharmacy duly licensed by the state of and New Jersey and duly registered with the state of New York.

3. I am also Co-President of Plaintiff BDRN Pharmacy, LLC ("BDRN-NY" and, together with BDRN-NJ, "BDRN"), located in Walden, New York and which is a pharmacy duly

HISCOCK & BARCLAY, LLP

8841504.1

licensed by the state of New York.

4. BDRN serves patients, including some United Healthcare members, throughout the New York-New Jersey metropolitan area, including Westchester County.

5. BDRN, which stands for Bleeding Disorders Resource Network, specializes in bleeding disorders such as hemophilia, which prevents clotting and leaves patients susceptible to spontaneous bleeds into their joints and other areas of the body.

6. BDRN's executives have decades of experience serving the hemophilia community and are members and officers of the Bleeding Disorders Association of the Southern Tier, the New York State Hemophilia Advocacy Coalition, The National Hemophilia Foundation and the Hemophilia Association of New Jersey, among others.

7. One of the other BDRN Co-Presidents is a hemophiliac himself, and his wife is another Co-President, ensuring that their understanding of this disease is personal as well as professional and clinical.

8. Retail pharmacies such as BDRN often deliver medications to the patient's home or other location at a time specifically requested by the patient, or will hold the medications at the pharmacy if that is the patient's preference.

9. In order to provide this high level of customer service, BDRN has hired several drivers whose full-time, dedicated job is to personally deliver medications to BDRN's patients. BDRN's drivers do more than just drop off medications, however. They also serve as the eyes and ears for the patients' treatment centers, which typically only meet with the patients in person once or twice per year.

10. BDRN applied in early 2014 to join United's specialty pharmacy network on behalf of United member Plaintiff John Doe. BDRN was instructed by United to return a completed

National Provider Inquiry Questionnaire ("Questionnaire").  *See* Murphy Aff. Ex. B.

11. The Questionnaire requires applicants, even local retail pharmacies like BDRN, to, among other things, provide services with geographical coverage in the majority of the United States.  Such a requirement obviously is ludicrous for local retail pharmacies such as BDRN, whose customer base is located primarily in the New York-New Jersey metro area, and serves no purpose other than as an impermissible barrier to entry.

12. The Questionnaire also imposes the condition that applicants obtain accreditation by the Utilization Review Accreditation Commission, commonly known as "URAC."  There is no provision under New York law for the requirement that a pharmacy be accredited by URAC, or any other accrediting body.

13. Moreover, my understanding is that URAC is a creation of the pharmacy benefit manager ("PBM") industry and serves primarily as an anti-competitive barrier to entry for retail pharmacies that would compete with large PBMs and their affiliated mail-order pharmacies.

14. For example, URAC's accreditation fees for specialty pharmacies are approximately $30,000 for a single pharmacy location, and URAC takes months to make a determination after the application has been submitted.

15. Aside from the inappropriate time and expense imposed by URAC, such accreditation is simply not necessary.  For decades independent pharmacies in New York have been dispensing medications that the PBM industry is now deeming "specialty drugs."  Without obtaining URAC accreditation, these independent pharmacies have provided excellent service to their clients.

16. There is simply no clinical necessity for independent pharmacies to obtain URAC accreditation.  To the contrary, the imposition of conditions such as URAC accreditation and other

HISCOCK & BARCLAY, LLP

3

8841504.1

conditions that are inapplicable to retail pharmacies have decreased the number of pharmacies in PBM specialty pharmacy networks with the effect that patients have decreased access to the pharmacy of their choice.

17. United informed BDRN that it would be ineligible for participation in United's specialty pharmacy network if it did not have URAC accreditation.

18. Because BDRN has been improperly denied membership in United's specialty pharmacy network, BDRN's patients who are United members, including Plaintiff John Doe, now have no choice but to obtain their medications by mail order from United's corporate affiliate, OptumRx.

19. Unlike other products that can be more freely substituted for one another, the "specialty" drugs that United steers to OptumRx either are uniquely prescribed for particular indications or are among a small group of drugs that can be so prescribed. Substitution with other drugs can result in dangerous or even fatal consequences for patients. For that reason, there is virtually no reasonable interchangeability among these drugs.

20. We at BDRN have seen our patients cherry picked by OptumRx without the opportunity to compete on the merits of our service, expertise and loyalty to customers.

21. Failure to allow BDRN to fill prescriptions for United members who seek to use us as their local retail pharmacies threatens the health of these patients, including Plaintiff John Doe.

22. There is no question that BDRN and our patients will suffer irreparable harm in the absence of a TRO and preliminary injunction.

HISCOCK & BARCLAY, LLP

4

8841504.1

_____
NELSON ESCOTO

Subscribed and sworn to before me

this 30th day of January, 2015

_____
Notary Public

ALYSSA M SANCHEZ
Notary Public - State of New York
NO. 01SA6272785
Qualified in Orange County
My Commission Expires Nov 26, 2016