# EXHIBIT E



# Fax Transmittal

Date: 02/11/2014   Total pages: ( Incl. cover sheet) 10

To: Oxford Appeals Dept.   From: Yolanda Vento

Fax #: 877-220-7537   Fax #: 973-513-9032

Phone #: ___   Phone #: 973-513-9031

Re: Reference # 101371320   CC: ___

[ ] Per your request   [ ] Urgent   [ ] Please reply   [ ] Other: ___

**Message:**

To whom it may concern,

Following please find our written appeal for the above reference file.

Should you require additional information, please do not hesitate to contact me at 973-513-9031

Sincerely,

Yolanda Vento
Co-President
973-513-9031
yvento@mybdrn.com

**Confidentiality and Privacy Notice:** The information in this transmission may contain privileged and confidential information. It is intended ONLY for the use of the person(s) or entity named above. If you are not the intended recipient, you are here notified that any review, dissemination, distribution, duplication or disclosure of this communication by any other person or entity is strictly prohibited. If you are not the intended recipient, please contact the sender at 973-513-9031 and destroy all copies of the original message.

● 1 South Corporate Drive, Suite D - 2nd Floor, Riverdale, NJ 07457-1718 ● Office 973-513-9031 ● Fax 973-513-9032 ●

Exhibit E 000002



February 11, 2014

Oxford Health Plan

Re: Clinical case review denial appeal.

**Request Services Summary:**
Member name: Redacted
DOB: Redacted
Service code: J7192

Oxford Member ID#: Redacted
Reference #: 101371320

To Whom It May Concern:

A prior authorization request to continue servicing the member was denied based on the following: "Per member's health plan self-administered medications are covered through the prescription drug benefit and obtained through the Specialty Designated Pharmacy program."

Under NY State AMMO law the member has the right to fill any scripts with a pharmacy of their choice, as long as the pharmacy accepts the same price and applicable terms and conditions given by the insurance plan. BDRN, LLC is currently participating in the OptumRX network. When BDRN called OptumRx to obtain authorization to service Mr. Redacted, we were told that the member has a "Benefit Plan Exclusion" for his hemophilia products, had to use a Specialty pharmacy network provider, and that only Oxford can override the authorization to allow BDRN, LLC to service the member.

Also, on June 2013 the New York State Assistant Attorney General sent a letter encouraging insurance plans implement a "Specialty Prescription Drug Fulfillment Hardship Exception Criteria" for situations like the one being encountered by Mr. Redacted. We are asking if Oxford has developed such a policy. If so, please forward a copy to us.

We are requesting that an authorization be given to BDRN, LLC to continue to service Mr. Redacted for his hemophilia factor based on Mr. Redacted's request and the application of the NY state AMMO Law.

I have attached a copy of the denial letter, Authorization from Mr. Redacted to appeal his denial, and a copy of the article referencing the "Specialty Prescription Drug Fulfillment Hardship Exception Criteria". Should you have any questions or need additional information, I may be contacted at 973-513-9031 or via e-mail.

Sincerely,

*Yolanda Vento*

Yolanda Vento
Co-President
973-513-9031
yvento@mybdrn.com

1/31/14

NY Attorney General Health Care Bureau Helpline
The Capitol
Albany, NY 12224

To Whom It May Concern:

Hello. My name is [Redacted] and I was born with severe factor VIII deficiency (hemophilia A). Due to my illness, I do not clot like a normal person and I am susceptible to spontaneous bleeds into my joints and other areas of my body. If these bleeds are not treated as prescribed, they can become limb or life threatening.

I have been receiving my clotting factor (medicine I use to treat my bleeds) from BDRN, LLC (BDRN). I placed an order with BDRN this year (2014) as I was getting low on my factor (5 doses left) and ancillary supplies and experiencing a knee bleed. To my surprise, BDRN informed me that they had received a denial and that I needed to call the number on the back of my ID card for assistance in locating a Specialty Designated Pharmacy. I spoke to BDRN who informed me of the AMMO Law and stated that I may be protected under the law. As far as we know, it is NOT a self funded plan and it is NOT collectively bargained. BDRN then placed a call on my behalf to Dorothea Caldwell-Brown, Assistant Attorney General of the State of New York. Ms. Brown suggested I either call the Health Care Bureau Helpline or write a letter to the same giving BDRN permission to advocate on my behalf regarding my insurance and the denial they received.

BDRN is the only company that will delivery my factor and ancillary supplies to my home via personal delivery at the time and date specified by me or my wife. All the other companies that I've dealt with will drop ship the medication via UPS or Fed Ex. Unfortunately, this does not work for me as we are a working family with a small child and can't wait around for UPS or Fed Ex to drop off a package. The package cannot be left as I live in a small walk up and it is not safe to leave in the common area. Due to privacy issues and the size of the package (sometimes two huge boxes that need to be refrigerated), I prefer not to have the package sent to my work address. BDRN is also the only company that will pick up my medical waste. Other companies send me "mail-away sharps" that have huge bio-waste signs all over them. I have to personally take them to the post office to have them shipped for destruction. Again, another privacy issue for me personally. I am hoping that BDRN can continue to provide the excellent service that they have always offered my family. This letter serves as permission for BDRN to advocate on my behalf.

Here is my demographic information along with my insurance information. I am also enclosing a copy of the denial that BDRN received via e-mail from Alexa M. Loyola. Her contact information is as follows:

Alexa_M_Loyola@uhc.com

PAGE 3/11 * RCVD AT 2/11/2014 3:05:20 PM [Central Standard Time] * SVR:APSEP0822/33 * DNIS:316449225 * CSID:19735139037 * DURATION (mm-ss):06-02

Exhibit E 000004

800-889-7658 ext. 36764
203-459-6764

United Healthcare
Oxford Freedom Plan
Health Plan 80840 911-06111-07
Member ID Redacted
Group #VT3084
DOB Redacted

Please give this the highest priority as I am currently having a knee bleed and down to five doses that can last anywhere from 3-7 days.

If you need to contact me, please do so at my cell phone 1.914.Redacted Please be aware that I work in a call center and may not be able to talk or return your phone call immediately.

Regards,




**UnitedHealthcare**
Oxford

48 Monroe Turnpike
Trumbull, CT 06611

January 30, 2014

Bdrn Llc
1 S Corporate Dr Ste D 2nd Fl
Riverdale, NJ 07457

Dear Redacted Jr,

UnitedHealthcare Services, Inc. on behalf of Oxford has received and reviewed a request for the following services:

**Requested Services Summary**
Member Name: Redacted
Oxford Member ID#: Redacted
Group Name: Voyetra Turtle Beach, Inc
Group #: VT3084
Date of Service: 01/28/14
Service Provider: Not applicable
Facility: Bdrn Llc
Diagnosis Code: 286.0 CONGENITAL FACTOR VIII DISORDER
Service Code(s): J7192
Description of Service Code(s): Factor viii per iu nos
Denial Code: Not applicable
Claim Amount: Not applicable
Reference #: 101371320

Our Medical Director has determined that the request is: Denied - Not Covered Under Medical Benefit.

After consideration of all available information, our Medical Director has determined that the requested procedure will not be covered for the following reason(s): Per your health plan self-administered medications are covered through the prescription drug benefit and obtained through the Specialty Designated Pharmacy program. Please call the number on the back of your I.D. card for assistance in locating a Specialty Designated Pharmacy..

If you would like your physician or health care professional to discuss this case with our physician or clinical reviewer, he or she may call Oxford's clinical staff under the direction of Dr. Taiye Gilles toll-free at 1-800-666-1353. When prompted, please select "Provider," then "Pre-Certification." Then, enter either your Provider ID or push the # key. Last, choose "Peer-to-Peer Review."

Your satisfaction is important to us. As part of our continuing efforts to increase Member satisfaction, it is our goal to thoroughly review your request and provide you with a prompt response. If you have any additional questions, please contact Customer Service at the number on your Oxford Member ID card or by calling **Oxford Customer Service at 1-800-444-6222.** As an added service to you, you may review claims, check referrals, change your primary care physician (PCP), and obtain other helpful Member information through our web site, *www.oxfordhealth.com.*

Exhibit E 000006

We have enclosed a detailed explanation of the Member's Appeal Rights. A Member has the right to request a review of a denial of services. If the Member would like to appeal, the Member should follow the First-Level Member Appeal Rights process described in the enclosure in response to the question, *"How do I submit a First-Level Appeal request?"*.

If you are hearing impaired and require assistance, please call our TTY/TDD line at 1-800-201-4875. Please call 1-800-303-6719 for assistance in Chinese, Mandarin or Cantonese, 1-888-201-4746 for assistance in Korean, 1-800-444-6222 para ayuda en espanol or the number on your Oxford ID card for assistance in English and other languages. Interpreters are available Monday through Friday between 8:00 AM and 6:00 PM EST.

Sincerely,
Alexa Loyola, Coordinator

Enclosure: Explanation of Your Appeal Rights

cc: Bdrn Llc , Christopher Walsh MD

MNI020.22 /MS-12-061 Rev. 06/2912                    01302014

# Attorney General takes action for AMMO

PSSNY asked to meet with the Attorney General to discuss AMMO

### Here is what we learned...

In a letter sent in February, PSSNY requested a meeting with the Attorney General's office to discuss issues related to restricted networks and enforcement options for New York's laws preventing mandatory mail order. We copied Assemblyman John McDonald (D-Cohoes) on the letter. The meeting took place Thursday, April 11th at the Attorney General's offices in lower Manhattan. Assistant Attorney General Dorothea Caldwell-Brown and Health Bureau Chief Lisa Landau met with PSSNY representatives who were joined by Jennifer Mallon, Vice-President and General Counsel for NCPA, and the newly elected pharmacist-legislator John McDonald.

We learned that the Health Bureau had been actively investigating complaints from consumers who called the Health Care Helpline (800-428-9071) to explain why they wanted to have prescriptions filled at their local pharmacy. As staff at the Health Bureau worked to follow up and resolve these complaints, they developed questions and were eager and willing to meet with pharmacists to learn more. The meeting lasted over an hour. Topics included communications to consumers that are misleading, 'prior authorization' requests sent to prescribers that are recorded as new prescriptions, robo-refills, unstoppable credit card charges for co-payments and other issues.

On June 3, the Attorney General's Office informed the press that a settlement had been reached with Empire BlueCross BlueShield to implement "Specialty Prescription Drug Fulfillment Hardship Exception Criteria" so that their enrollees who meet any of the specific criteria are guaranteed to have prescriptions filled at local participating pharmacies and will not be forced into mail order pharmacy. The press release named fifteen other health plans that received letters from the Health Bureau that included the same criteria.

12 NYS Pharmacist: Century II May/June 2013 - Volume 87 - Issue 3

Exhibit E 000008
PAGE 7/11 * RCVD AT 2/11/2014 3:05:20 PM [Central Standard Time] * SVR:APSEP0822/33 * DNIS:316449225 * CSID:19735139037 * DURATION (mm-ss):06-02

Here is the text of the letter sent to chief operating officers of the following:

| | |
|---|---|
| Aetna Inc. | Health Now New York, Inc. |
| AXA Equitable Life Insurance Company | Independent Health |
| CDPHP | MVP Health Care |
| CIGNA | Oxford Health Plans, LLC |
| Emblem Health Inc. | The Guardian Life Insurance Company of America |
| Excellus Blue CrossBlue Shield | |
| Fidelis Care New York | United Health Care |
| HealthFirst | WellPoint, Inc. |



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
120 Broadway, New York, New York 10271

ERIC T. SCHNEIDERMAN
Attorney General

DOROTHEA CALDWELL-BROWN
Assistant Attorney General
Division of Social Justice
Health Care Bureau
Voice: (212) 416-8046
Fax: (212) 416-8034

June 3, 2013

VIA FIRST CLASS MAIL

Re: Mail-Order "Specialty" Pharmacies

Dear ------:

The New York State Attorney General's Office has received dozens of complaints relating to health insurance company policies that require plan members to purchase certain drugs from mail-order and specialty pharmacies. These complaints have come from health care consumers across New York State, including ------. Recently, the New York State Attorney General negotiated with Empire Blue Cross Blue Shield to encourage them to implement Empire's new "Specialty Prescription Drug Fulfillment Hardship Exception Criteria" that permit qualifying members to obtain specialty drug prescriptions at retail pharmacies. Policies like this can help ensure access to critical medicines for consumers, which is why our office is encouraging ------ to implement a similar policy, if such a policy is not already in place.

The complaints received in the New York State Attorney General's Health Care Bureau from New York consumers raise a range of very serious concerns about health plan blanket requirements to obtain prescription drugs through the mail. For some consumers, packages that arrive through mail-order compromise their privacy, resulting in curiosity by family members regarding the nature of the consumer's medical condition. Where drugs require refrigeration, home delivery may interfere with consumers' work schedule or result in spoilage of the specialized medicines. Finally, where dosage is in flux, mail delivery of what may not be the current dosage presents serious health challenges. These are just a few real examples of undeniable hardships wrought by the imposition of inflexible policies requiring mail-order prescriptions.

Please advise by June 17, 2013 as to whether ------, has a mail-order exception policy in place, and if so, please provide a copy of your policy to our office. If ------ does not have such a policy, please advise whether and when it plans to implement such a policy.

If you have any questions regarding this matter, please contact me at the number listed above. Your prompt cooperation is appreciated.

Very truly yours,

Dorothea Caldwell-Brown
Assistant Attorney General

## Specialty Prescription Drug Fulfillment Hardship Exception Criteria Developed by Attorney General and sent to Health Plans

These Hardship Exception Criteria apply to the Specialty Drug Mandate that requires certain drugs to be filed by the designated Specialty Pharmacy Provider(s). These Criteria do not override existing clinical prior authorization or medical necessity review processes or benefit coverage criteria.

The Member need only meet 1 of the following exceptions to qualify for an exception to the specialty pharmacy fulfillment requirement (but note, certain exceptions are of limited duration):

1. Member indicates that he/she has a privacy associated with receiving specialty drugs via Specialty delivery/overnight courier and after discussion with a designated Specialty Pharmacy Provider(s) representative about possible alternative locations to which the medication(s) could be delivered by the Specialty Pharmacy (such as to the prescribing physician's office or to an alternative address specified by the Member like a work address, friend or relatives address, neighbor, etc.) a determination is made that there is no suitable alternative delivery location. Examples of Member privacy concerns may include but are not limited to, the following:

   a. Member lives in an apartment or condo building where there is a central mailbox and the mailbox is too small to put the package in so the delivery person leaves it on the floor when they are not able to leave the package at the front door.

   b. Member is transient and doesn't have a permanent residence and needs to pick up the medication as they don't know where they will be at the time of the delivery.

continued next page

c. Member lives in a high rise with a door man who receives all deliveries.

d. Member lives in an unsafe area where packages left at the door may be stolen.

e. Member lives on a main (busy) street where leaving the package at the front door may pose risk to others (i.e. children frequently play in the areas and may take the medication not knowing what it is for.

This exception, once granted, applies to all specialty drugs for which use of a designated Specialty Pharmacy Provider(s) would otherwise be mandated, for an unlimited period for this Member.

2. The Specialty drug(s) utilized by the Member requires additional local support that cannot be provided by a designated Specialty Pharmacy Provider(s) because the Member is unable to communicate effectively by available means, e.g., phone, internet or fax, in order to obtain the prescribed drug(s) and engage in reasonable and appropriate drug product consultation. The basis for exception request must be supported by a written statement from the prescribing physician attesting to the condition of the member that prevents the member from reasonable and appropriate drug product consultation with the specialty pharmacy. This exception, once granted, applies only to the specific drugs with respect to which the request was made/approved, but applies for an unlimited period;

3. Member has a demonstrated history of past service failures by designated Specialty Pharmacy Provider(s) resulting in member not obtaining medication on a timely basis. Customer Service can obtain the support for this exception by contacting the designated Provider(s) and looking at claims history. This exception, once granted, applies to all specialty drugs for which use of a designated Specialty Pharmacy Provider(s) would otherwise be mandated, for an unlimited period;

4. Designated Specialty Pharmacy Provider(s) doe not support a copay/payment assistance program permitted by WellPoint for the specific drug at issue, which is supported by an alternative in-network pharmacy which the Member proposes to use. This exception, once granted, applies only to the specific drug with respect to which the request was made/approved and applies only for a period of twelve (12) months;

5. Member is utilizing a Human Growth Hormone medication from a prescribing physician for whom designated specialty Pharmacy Provider(s) does not fill prescriptions due to their internal risk policy. This exception, once granted, applies only to the specific Human Growth Hormone specialty drug with respect to which the request was made/approved, and applies only for a period of twelve (12) months.

6. Member will be residing at an address (temporarily or permanent) to which designated Specialty Pharmacy Provider(s) indicates it cannot provide reasonably appropriate or consistent on-time delivery to this address. This exception, once granted, applies to all specialty drugs for which use of designated Specialty Pharmacy Provider(s) would otherwise be mandated, for the period during which such Member resides at such address; OR

7. Member is new to therapy on the specialty drug at issue and dosing has not been stabilized and will likely fluctuate in near term per clinical indication by prescribing physician. The basis for this exception request must be supported by a medically sound written statement from the prescribing physician confirming the above indication. This exception, once granted, applies only to the specific specialty drug with respect to which the request was made/approved and applies only for the a period of six (6) months.

---

**1988—Twenty-five years ago:**

American College of Physicians called for enhanced education in rational therapeutics including "increased communication with pharmacists, as health care professionals with particular knowledge in this area."

RU-486 (mifepristone) first marketed in France as a safe and effective method of early abortion.

---

**HELP PASS PHARMACY LAW™**

NY - FL - NJ - PA

Review Courses - Review Books

www.helppasspharmacylaw.com

14 NYS Pharmacist: Century II                                    May/June 2013 • Volume 87 • Issue 3

Exhibit E 000010

PAGE 9/11 * RCVD AT 2/11/2014 3:05:20 PM [Central Standard Time] * SVR:APSEP0822/33 * DNIS:316449225 * CSID:19735139037 * DURATION (mm-ss):06-02

# Lobbying to Strengthen NYS Law Against Mandatory Mail Order

**Assembly passes AMMO Reform Bill in June, 2013; Goal is Passage in Both Assembly and Senate in 2014**

## Then

PSSNY enjoyed a resounding legislative victory in 2011 when members of the NYS Assembly and Senate voted nearly unanimously for a bill that would guarantee that consumers in New York in the private insurance market would always have the option to utilize a local pharmacy. Our accomplishment came full-circle when Governor Andrew Cuomo signed the legislation into law on December 12, 2011, effective January 11, 2012.

In agreeing to sign the law, the Governor commented that the actual language to go into statute needed to be clarified. At his request both houses passed legislation incorporating changes recommended by the Executive. Accordingly, the local participating retail pharmacy must *agree in advance, through a contractual network agreement, as well as the same applicable terms and conditions that the insurer has established for the network participating mail order or other non-retail pharmacy*.

Officials at the Department of Financial Services (the NYS agency charged with enforcing Insurance laws) interpret the term "other non-retail pharmacy" to mean 'specialty' pharmacies. Clearly, NYS law ends mandatory mail for all covered drugs.

Officials also point out that law requires the retail pharmacy to have a contract that specifies its agreement to accept the same price as well as terms and conditions. However, the law does not require that retail pharmacies are given such a contract.

Pharmacies that have pressed PBMs and health plans for these contracts have learned that *terms and conditions* are being used to block retail pharmacies from participating, thereby undermining the clear intent of the law.

> New 'terms and conditions' are specifically designed to steer prescription volume into pharmacies that are wholly owned by Pharmacy Benefit Managers....

## Now

In 2013 we returned to the legislature and asked AMMO bill sponsors, Assemblyman Carl Heastie (D-Bronx) and Senator George Maziarz (R-Monroe, Niagara and Orleans), to introduce legislation that would strengthen AMMO. The result is A5723-A sponsored by Assemblyman Heastie with nineteen co-sponsors and S3995-A sponsored by Senator Maziarz and fifteen co-sponsors.

The new legislation accomplishes three things: (1) removes 'terms and conditions' and pre-existing contract provisions; (2) adds a definition of 'same reimbursement'; and (3) defines 'mail order'.

Pharmacy owners from across the state, independents and some chains, came to Albany on March 5th and again on April 16th to lobby for this new bill. We pointed out that:

- Existing law is not working for consumers.
- Consumers are complaining to state agencies, demanding access to local pharmacies.
- The bill eliminates barriers that undermine original legislative intent.
- It's cost-neutral. Cost should be no more at retail than at mail.
- These changes will prevent gamesmanship in marketing.

Specifically, with regard to *terms and conditions*, we pointed out that:

- 'Terms and conditions' are being used by Pharmacy Benefit Managers to block community pharmacies from dispensing certain covered drugs.

continued next page

May/June 2013 • Volume 87 • Issue 3    NYS Pharmacist: Century II 15

Exhibit E 000011

PAGE 10/11 * RCVD AT 2/11/2014 3:05:20 PM [Central Standard Time] * SVR:APSEP0822/33 * DNIS:316449225 * CSID:19735139037 * DURATION (mm-ss):06-02

- New 'terms and conditions' are specifically designed to steer prescription volume into pharmacies that are wholly owned by Pharmacy Benefit Managers.

- 'Terms and conditions' in state law raise significant antitrust issues.

- New 'terms and conditions' are designed for large public companies that do not operate in a community retail environment.

- 'Terms and conditions' in state insurance law create bureaucratic procedures designed as barriers to community pharmacy participation.

- 'Terms and conditions' undermine the law's original intent, which is to guarantee that consumers have the option to choose a local pharmacy.

## Examples of Hostile Terms and Conditions

- <u>Extensive reporting requirements in multiple formats that software systems in community pharmacies do not support</u>. Pharmacy Benefit Managers adjudicate claims for all prescriptions dispensed in community pharmacies. They have access to data.

- <u>Unnecessary and onerous accreditation requirements</u>. Pharmacies in New York are registered and operate under the jurisdiction of the State Board of Pharmacy and dispense medications in a highly regulated environment. Accreditations specified in 'terms and conditions' are very expensive. They are designed as a barrier to keep community pharmacies out of a growing pharmaceutical market.

- <u>Cumbersome and time-consuming application process featuring extensive requests for documentation that go far beyond community pharmacy business practices.</u>

---

The following is the new language that would appear in NYS Insurance Law if AMMO reform is signed into law. As of June, 2013, only the Assembly has passed the bill. The legislature is scheduled to reconvene in January, 2014.

### A5723-A Heastie/S3995-A Maziarz

Definitions: For the purpose of this paragraph:

"Same reimbursement amount" shall mean that any coverage described under paragraph B of this section shall provide the same benchmark index, including the same average wholesale price, maximum allowable cost and national prescription drug codes to reimburse all pharmacies participating in the insurer's network regardless of whether a pharmacy is a mail order pharmacy or a non-mail order pharmacy.

"Mail order pharmacy" means a pharmacy whose primary business is to receive prescriptions by mail, telefax or through electronic submissions and to dispense medication to patients through the use of the United States Mail or other common or contract carrier services and provides any consultation with patients electronically rather than face-to-face.

(B) Any policy that provides coverage for prescription drugs shall permit each insured to fill any covered prescription that may be obtained at a network participating mail order or other non-retail pharmacy, at the insured's option, at a network participating non-mail order retail pharmacy provided that the network participating non-mail order retail pharmacy agrees to the same reimbursement amount that the insurer has established for the network participating mail order or other non-retail pharmacy. In such a case, the policy shall not impose a co-payment fee or other condition on any insured who elects to purchase prescription drugs from a network participating non-mail order retail pharmacy which is not also imposed on insureds electing to purchase drugs from a network participating mail order or other non-retail pharmacy.

*Deleted are "terms and conditions"*

*Deleted are "agrees in advance through a contractual network agreement"*

16 NYS Pharmacist: Century II          May/June 2013 • Volume 87 • Issue 3

Exhibit E 000012
PAGE 11/11 * RCVD AT 2/11/2014 3:05:20 PM [Central Standard Time] * SVR:APSEP0822/33 * DNIS:316449225 * CSID:19735139037 * DURATION (mm-ss):06-02