UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**BDRN, LLC, BDRN PHARMACY, LLC, and JOHN DOE,**

      *Plaintiffs*,

  vs.

**UNITEDHEALTHCARE OF NEW YORK, INC., UNITEDHEALTHCARE INSURANCE COMPANY OF NEW YORK, and OPTUMRX, INC.,**

      *Defendants.*

Case No. 15-cv-804 (NSR)

Hon. Nelson S. Román,

U.S.D.J.

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

            **HISCOCK & BARCLAY, LLP**
            *Attorneys for Plaintiffs*
            80 State Street
            Albany, New York 12207
            Telephone: (518) 429-4248
            Facsimile: (518) 533-2943

Linda J. Clark, Esq.
Joseph A. Murphy, Esq.
*Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

FACTS ........................................................................................................................1

ARGUMENT..................................................................................................................2

A. Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction....................2

B. Plaintiffs Will Succeed On The Merits..........................................................................4

1. BDRN Has Standing to Bring These Claims..................................................4

2. United's Denial of the Pharmacy Plaintiffs' Application to Join its Specialty Pharmacy Network Violates New York's Insurance Law...............................5

3. Defendants are Violating Antitrust Law........................................................7

C. The Balance Of Hardships Favors Plaintiffs............................................................10

CONCLUSION..............................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Albany Med. College v. Lobel*
  296 A.D.2d 701 (3d Dep't 2002)...................................................................................4
*Battenkill Veterinary Equine P.C. v. Cangelosi*
  1 A.D.3d 856 (3d Dep't 2003).......................................................................................4
*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*
  140 F.3d 494 (3d. Cir. 1998).......................................................................................11
*Commercial Data Servers, Inc. v. International Business Machines Corp.*
  262 F. Supp. 2d 50 (S.D.N.Y. 2003) ..................................................................... 10, 11
*Copperweld Corp. v. Independence Tube Corp.*
  467 U.S. 752 (1984)......................................................................................................9
*Credit Default Swaps Antitrust Litigation*
  2014 U.S. Dist. LEXIS 123784, at *32 (S.D.N.Y. Sept. 4, 2014)................................9
*Dental Soc. of New York v. Carey*
  61 N.Y.2d 330 (1984) ...................................................................................................5
*Gunther v. Capital One, N.A.*
  703 F. Supp. 2d 264 (E.D.N.Y. 2010) .........................................................................8
*Hudes v. Vytra Health Plans Long Island, Inc.*
  295 A.D.2d 788 (3d Dep't 2002)..................................................................................7
*Mahoney v. Pataki*
  98 N.Y.2d 45 (2002) .....................................................................................................5
*Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*
  5 F. Supp. 2d 694 (D. Minn. 1998)..............................................................................10
*Molinari v. Bloomberg*
  596 F. Supp. 2d 546 (E.D.N.Y. 2009) .........................................................................8
*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*
  2011 U.S. Dist. LEXIS 51330, at *59 (E.D.N.Y. Jan. 4, 2011)...................................9
*State Farm Mut. Auto Ins. Co. v. Rabiner*
  749 F. Supp. 2d 94 (E.D.N.Y. 2010) ...........................................................................7
*State Farm Mut. Auto. Ins. Co. v. Mallela*
  4 N.Y.3d 313 (2005) .....................................................................................................7

**Statutes**

NEW YORK INSURANCE LAW §§ 3216, 3221 ("AMMO Law") ..................................*passim*

**Rules**

11 N.Y.C.R.R. § 65-3.16(a)(12) ............................................................................................8

**Articles**

*New Drug Channels Institute Study Reveals the 10 Companies Dominating Specialty Pharmacy, Identifies Key Trends Affecting Profitability*, Business Wire (Jan. 28, 2015) .............................9

## PRELIMINARY STATEMENT

Defendants' response to the instant motion is a perfect example of why relief from this Court is necessary. Defendants have shown a drastic insensitivity to the health needs of Mr. Doe and a disdain of the legislative mandate imposed by the State of New York. Defendants' barrier to entry in the form of inapplicable terms and conditions has created a specialty pharmacy network that includes <u>not a single retail pharmacy</u> throughout the state of New York. That, coupled with the repeated failures of Defendants in providing Mr. Doe access to his medication, illustrates the irreparable harm facing Plaintiffs. Defendants have also failed in their attempt to escape judicial review by arguing that there is no private right of action under the AMMO Law and that Defendants are not subject to the antitrust laws because of their corporate affiliation.

Plaintiffs respectfully submit the following Reply Memorandum of Law in further support of their application for a preliminary injunction requiring United to allow BDRN to participate in United's specialty pharmacy network. Plaintiffs also submit the accompanying Reply Declaration of Joseph A. Murphy ("Murphy Reply Dec.").

## FACTS

Plaintiffs set forth here facts arising after the submission of the initial papers on this motion. For a full recitation of the facts, Plaintiffs respectfully refer the Court to their opening Memorandum of Law and accompanying Declarations.

On February 13, 2015, this Court issued an Order to Show Cause containing a provision requiring "Defendants as soon as practicable to allow BDRN to fill Plaintiffs' prescription for medicine as if it is a [participant] in United's Specialty Pharmacy Network for Pharmacy Benefit." (ECF No. 7) Defendants objected and represented to the Court that they could deliver Mr. Doe's medication to him by courier from "a New York-based pharmacy – Bioscrip"

(actually located in Lake Success, New York) or he could pick it up directly from one of three Hemophilia Treatment Centers ("HTCs") purportedly in Mr. Doe's "location." (Murphy Reply Dec. ¶ 2 & Ex. F). Plaintiffs reported that two of the three HTCs are located in Manhattan and thus clearly not in Mr. Doe's "location," and Plaintiffs were unaware of the location of the third HTC. (Murphy Reply Dec. ¶ 3 & Ex. F). Nonetheless, based on these representations by Defendants, the Court issued a Memorandum Endorsement Order on February 18, 2015 directing Mr. Doe to seek his medication from "a participating pharmacy." (ECF No. 11)

On February 23, 2015, Mr. Doe called the telephone number on his United membership card and asked to have his medication delivered by courier from BioScrip. United, however, told him that he could not obtain his medication from BioScrip and would instead have to get it from OptumRx. Plaintiffs' counsel contacted Defendants' counsel and was informed that Mr. Doe should contact BioScrip directly. Mr. Doe contacted BioScrip on February 24, 2015 and was told that before he could obtain his medication, he needed to provide, among other things, demographic information and a copy of the prescription, notwithstanding the fact that United already had that information on file. Plaintiffs will advise the Court, on notice, of any significant developments arising after filing of this Reply Memorandum. (Murphy Reply Dec. ¶ 4)

## ARGUMENT

### A.   Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction

Defendants' arguments that Plaintiffs will not suffer any irreparable harm absent injunctive relief is belied by the facts.

Defendants argue first that Mr. Doe has "reasonable access" to his medications. However, Mr. Doe has attested to the multiple problems he has had with delivery from Defendants and their arms-length vendors (Compl. ¶¶ 61-79; Declaration of Joseph A. Murphy

2

dated February 9, 2015 ("Murphy Dec.") Ex. C ¶¶ 9-19)  Moreover, one option that Defendants apparently deem "reasonable access" includes Mr. Doe traveling from Westchester County to pick up his medication at a facility in Manhattan.  (Murphy Reply. Aff. ¶ 2 & Ex. F)  Perhaps most revealing, even after Defendants represented to this Court that Mr. Doe could obtain his medications by courier from Bioscrip, a United representative told him that he could not.  (Murphy Reply. Aff. ¶¶ 3-4)  If United cannot even rise to the occasion to provide accurate information to a plaintiff in the middle of litigation under court order, it cannot be counted on to provide reliable service to this Plaintiff or its other members when it is not under such scrutiny.

Additionally, Defendants' opposition papers reveal the shocking statistic that <u>not a single retail pharmacy</u> throughout the state of New York has been able to meet United's terms and conditions for its specialty pharmacy network.

Defendants further argue that Plaintiffs delayed seeking injunctive relief in early 2014.  However, Mr. Doe gave United every opportunity to demonstrate that its denial of his statutory rights could be tolerably mitigated.  United could not even do that.  After one delivery mishap in August 2014, Mr. Doe spent his Christmas Eve canceling his family plans, instead anxiously waiting and hoping that his medication would be delivered after United cut him loose and told him to deal with UPS on his own.  (Compl. ¶¶ 72-78; Murphy Dec. Ex. C ¶¶ 17-18)  Plaintiffs brought this action timely after obtaining the facts surrounding Defendants' end-of-year failure in delivery to Mr. Doe as promised.  BDRN is also suffering irreparable harm by losing patients who are being steered by United to its affiliated pharmacy.  *See Battenkill Veterinary Equine P.C. v. Cangelosi*, 1 A.D.3d 856, 859 (3d Dep't 2003); *Albany Med. College v. Lobel*, 296 A.D.2d 701, 703 (3d Dep't 2002).  Plaintiffs have thus established irreparable harm.

3

**B.     Plaintiffs Will Succeed On The Merits**

    **1.     BDRN Has Standing to Bring These Claims**

Defendants deign to dictate to Mr. Doe that he "is (or should be) agnostic as to the specialty pharmacy that provides them as long as his service needs are addressed," and they pigeonhole and diminish his interests as "receiving his specialty medications as conveniently as possible." (Defendants' Memorandum of Law dated February 20, 2015 ("Def. MOL") at 12).  In fact, Mr. Doe's interest is in his "choice . . . of a pharmacy for drugs that are essential to his health." (Compl. ¶ 94)  BDRN's interests are aligned with their patients such as Mr. Doe.

Even where "plaintiffs' pecuniary interests are not the primary motivation behind" a statute, such an injury exists where "those interests nonetheless derive from a right that is conferred by statute, i.e., the right to be adequately compensated for services as determined in accordance with the approved fee schedule."  *Mahoney v. Pataki*, 98 N.Y.2d 45, 52 (2002)  Here, the BDRN Plaintiffs, as pharmacy providers, are within the zone of interest of the AMMO law.[1]  *See id.* (*citing Dental Soc. of New York v. Carey*, 61 N.Y.2d 330 (1984)).

Additionally, the interests sought to be protected by this proceeding are germane to BDRN's purpose, and the BDRN pharmacies are appropriate organizations to act in a representative capacity on behalf of their patients, including Mr. Doe.  *See Dental Soc. of New York*, 61 N.Y.2d 334-35. The Pharmacy Plaintiffs thus have standing to seek a declaratory judgment on behalf of themselves and their patient-clients.

---

[1] The AMMO provisions in Section 3221 of the Insurance Law, governing group healthcare policies, are substantively identical to those in Section 3216, governing individual healthcare policies, and therefore do not alter the question before the Court.  Plaintiffs anticipate amending their Complaint to, among other things, add references to Section 3221, which apply to Plaintiff Doe's group healthcare policy from United.

4

## 2. United's Denial of BDRN's Application to Join Its Specialty Pharmacy Network Violates New York's Insurance Law

Defendants attempts to escape judicial review by arguing that the Ammo Law has no private right of action. The cases they cite, however, refer not to the AMMO Law, which was enacted in 2011, but to other provisions of the Insurance Law, and each case cited for that proposition was issued prior to the enactment of AMMO. (Def. MOL at 14) Moreover, a review of the AMMO Law's legislative history strongly suggests an implied private right of action on behalf of both the individual consumer and the consumer's retail pharmacy. The AMMO bill's Memo stated unequivocally that the purpose of AMMO was to "[p]rohibit[] health insurance policies from mandating their insured to purchase prescribed drugs from a mail order pharmacy." (Compl. ¶ 38) The Justification section of the AMMO bill explained in even greater detail that consumer choice was the driving purpose of the amendment. It stated in full:

> This legislation will provide freedom of choice to <u>consumers</u> who have coverage for prescribed drugs as part of their health insurance. When a policy mandates purchase from a specific mail order pharmacy the consumer is forced to purchase an interim supply of the prescribed drug from his or her neighborhood pharmacist who is familiar with his or her medical history. The risk to the consumer in this situation is obvious.
> Furthermore, the <u>neighborhood pharmacy</u> in these situations is forced to bear the burden of educating the patient as to the use and potential effects of the prescribed drug. The inability of the consumer to purchase the full prescription from the neighborhood pharmacy imposes this burden inequitably, thereby providing the mail order house with an <u>economic advantage</u> that the <u>local provider</u> cannot over come.
> Finally, many consumers, especially senior citizens, rely on their local pharmacist for the service that they provide with respect to monitoring the regimen of drugs that they take. A mandate of purchase by mail denies them of this important service and confidence.

(Compl. ¶ 39; Murphy Dec. Ex. A) (emphasis added)

There is thus no question that the AMMO Law fulfills the first factor for a private right of

action that "plaintiff is one of the class for whose particular benefit the statute was enacted" and the second factor that "recognition of a private right of action would promote the legislative purpose." *See Hudes v. Vytra Health Plans Long Island, Inc.*, 295 A.D.2d 788 (3d Dep't 2002). Plaintiff Doe is clearly a "consumer," and BDRN is a "neighborhood pharmacy" and "local provider" that "bears the burden of educating the patient as to the use and potential effects of the prescribed drug" and upon whom the Defendants "impose the burden inequitably." Moreover, unlike the statutory scheme in *Hudes*, the AMMO Law has "an additional purpose . . . to protect the economic interests of" providers such as BDRN, and thus BDRN are "members of the class for whose benefit the statute was enacted." *Cf. Hudes*, 295 A.D.2d at 789.

Finally, a private right of action also satisfies the third factor in that it is consistent with the statutory scheme. In *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313 (2005), the New York Court of Appeals found that a private right of action actually was *created by* a regulatory enactment under the Insurance Law prohibiting certain corporate misbehavior, even where such a private right was not stated explicitly. As explained in *State Farm Mut. Auto. Ins. Co. v. Rabiner*, "a common law private right of action under the No-Fault Laws was first recognized in Mallela. There, the Court of Appeals noted that no cause of action for fraud or unjust enrichment would lie for payments made to fraudulently incorporated providers before 11 N.Y.C.R.R. § 65-3.16(a)(12) went into effect." 749 F. Supp. 2d 94, 100 (E.D.N.Y. 2010). Similarly, a private right of action against Defendants here arose when the AMMO Law went into effect, notwithstanding the absence of an explicit grant of such a right and the concurrent general enforcement powers granted to the Commission of Insurance elsewhere in the scheme.[2]

---

[2] Defendants also reference the complaint filed with the Department of Financial Services ("DFS"). (Def. MOL at 14) However, Plaintiffs were not copied on the correspondence between United and the Department of Financial Services (Klein Dec. Exs. D, I) and thus had no notice or opportunity to respond to United's one-sided statements. (Murphy Reply Dec. ¶ 5)

6

Moreover, a declaratory judgment is particularly consistent with the statutory scheme. *See, e.g.*, *Molinari v. Bloomberg*, 596 F. Supp. 2d 546, 579 (E.D.N.Y. 2009) (finding private right of action to seek declaratory judgment against city officials not inconsistent with statutory scheme). In any event, even where a court finds no private right of action generally, a plaintiff may still seek declaratory relief, where, as here, the "declaratory judgment cause of action is distinct from his other valid causes of action." *See Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 276 (E.D.N.Y. 2010).

Defendants also attempt to bolster the credentials of URAC, but the best they could do was to cite several pages from URAC's own website and a single blogger. Even those sources, however, show the deleterious nature and effect of United's anti-competitive policies. A report by Drug Channels Institute CEO Adam J. Fein (referenced in Footnote 5 of United's brief) reveals that United is one of the "10 Companies Dominating Specialty Pharmacy" by operating "some of the biggest specialty pharmacies." (*See* Murphy Reply Dec., Ex. G). Accordingly, the universal requirement of URAC accreditation by United is not an "applicable" term or condition that can be imposed upon BDRN or other retail pharmacies under the AMMO Law.

### 3. Defendants Are Violating Antitrust Law

#### i. *Copperweld Does Not Foreclose Antitrust Suits Against Corporate Associates*

Defendants attempt to stretch the narrow holding of *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984) in arguing that the "Sherman Act does not prohibit the concerted actions of sister corporations." (Def. MOL at 18) However, as this Court held last year in *In re Credit Default Swaps Antitrust Litig.*, "*Copperweld*'s holding was limited; the Court expressly declined to 'consider under what circumstances, if any, a parent may be liable for

---

The inaction of DFS in response to this single complaint on an incomplete record thus is of no

conspiring with an affiliated corporation it does not completely own.'" 2014 U.S. Dist. LEXIS 123784, at *32 (S.D.N.Y. Sept. 4, 2014) (quoting *Copperweld*, 467 U.S. at 769).

In fact, Defendants have cited no binding case holding that corporate affiliates are incapable of conspiring together in a Sherman Act violation. To the contrary, courts in this Circuit have recognized that corporate affiliates can be joined as defendants in antitrust cases. "In order to link related corporate entities in a Sherman Act conspiracy, the plaintiffs must allege something beyond corporate affiliation, like evidence that both were involved in the challenged conduct, i.e., specific evidence of coordinated activity, or set forth facts establishing the [affiliates'] direct and independent participation in the alleged conspiracy." *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, 2011 U.S. Dist. LEXIS 51330, at *59 (E.D.N.Y. Jan. 4, 2011) (quotations and citations omitted). Here Plaintiffs have alleged that United and OptumRx were both participants in the antitrust activity, but with separate independent roles. United, as insurer, "has steered many expensive, high-profit drugs to OptumRx" (Compl. ¶ 34), and OptumRx delivers them to patients via mandatory mail order (Compl. ¶¶ 60-78).

Accordingly, Plaintiffs have "set forth facts establishing the affiliates' direct and independent participation in the alleged conspiracy."

### ii. *Plaintiffs Have Alleged Antitrust Injury*

Defendants accuse Plaintiffs of standing "well-settled antitrust jurisprudence on its head" by seeking to "protect competitors rather than competition and consumers." (Def. MOL at 18) In fact, it is Defendants who stifle competition, admitting to limiting choice by establishing a network where the number of retail pharmacies to choose from is . . . zero. (Def. Declaration of Matthew Klein dated February 17, 2015 ("Klein Dec.") Ex. D at 2 (admitting "no New York retail pharmacies are presently contracted with us for the same terms and conditions"))

moment to the Court's decision based on the current record.

Instead, United members are forced to use OptumRx or a handful of other non-retail services, with a concomitant decrease in the quality of care. (*See* Murphy Decl. Ex. E, Corman Aff. ¶¶ 10-12)  That is one measure of antitrust injury.  *See Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 5 F. Supp. 2d 694, 702 (D. Minn. 1998).  *See also Commercial Data Servers, Inc. v. International Business Machines Corp.*, 262 F. Supp. 2d 50 (S.D.N.Y. 2003).

### iii.     *Plaintiffs Have Alleged a Relevant Product Market*

Plaintiffs have properly alleged that "the relevant product market here is the market for the dispensing of the drugs contained in the formulary for United's specialty pharmacy network." (Compl. ¶¶ 85-86).  Defendants cite one inapposite Third Circuit case and argue that "factor drugs are available through many sources and healthcare coverage for factor drugs is available through many other health Plans – not just under Defendants' health Plans." (Def. MOL at 21)  In *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, plaintiff was a third-party administrator for health benefit self-insurers.  140 F.3d 494, 501 (3d. Cir. 1998).  Here, in contrast, Plaintiffs are a United member and the BDRN pharmacies, whose interests are aligned with their patient customers.  For United members in group health insurance coverage such as Mr. Doe, they have no choice but to use the insurer (United) presented to them by their employer. (*See* Def. Declaration of Maryann Britto ("Britto") dated February 20, 2015, Ex. "A-1").

Additionally, there is no "reasonable interchangeability" for the individual specialty drugs prescribed to United's members.  *Comm. Data Servers, Inc. v. IBM Corp.*, 262 F. Supp. 2d 50, 63 (S.D.N.Y. 2003).  Unlike other products that can be more freely substituted for one another, these drugs either are uniquely prescribed for particular indications or are among a small group of drugs that can be so prescribed.  Substitution with other drugs can result in dangerous or even fatal consequences for patients. (Murphy Reply Dec. Ex. E ¶¶ 13-14)

9

Accordingly, Plaintiffs have alleged a relevant product market.

### C. The Balance Of Hardships Favors Plaintiffs

Defendants misstate the nature of the status quo at issue, arguing that "[c]hanging the status quo to require United to include BDRN in the network creates an exception to United's legitimate requirements for pharmacies participating in this network." However, United's inapplicable terms and conditions are not legitimate requirements, and it is the status quo of the health of Mr. Doe and other United members that must be preserved by injunctive action.

As set forth above, the hardships of this matter lie in favor of Plaintiffs, because the injuries to be suffered by Plaintiffs are more substantial than any harm to Defendants.

### CONCLUSION

For the reasons set forth herein, the Court should issue a Preliminary Injunction ordering Defendants to allow BDRN to participate in United's Specialty Pharmacy Network for Pharmacy Benefit; and award Plaintiffs such other and further relief as this Court may deem proper.

**DATED**: February 24, 2015                 **HISCOCK & BARCLAY, LLP**

By: _____/s *Joseph A. Murphy*_____
        Linda J. Clark
        Joseph A. Murphy

*Attorneys for Plaintiffs*
BDRN, LLC, BDRN Pharmacy, LLC
 and John Doe
80 State Street
Albany, New York 12207
Telephone: (518) 429-4248
Facsimile: (518) 533-2943
E-mail: jmurphy@hblaw.com