UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                   :

BDRN, LLC, BDRN PHARMACY, LLC, AND  :
JOHN DOE,
                                   :

                    Plaintiffs,    :       15-cv-0804 (NSR)
    -against-                   :       MEMORANDUM AND
                                   :       ORDER

UNITEDHEALTHCARE OF NEW YORK, INC.,  :
UNITEDHEALTHCARE INSURANCE
COMPANY OF NEW YORK, AND            :
OPTUMRX, INC.,
                                   :

                  Defendants.    :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

      Plaintiffs BDRN, LLC and BDRN Pharmacy, LLC (collectively, "BDRN") and Plaintiff

John Doe brought this action in Supreme Court for the State of New York, Westchester County,

against UnitedHealthcare of New York, Inc., UnitedHealthcare Insurance Company of New

York, and OptumRx, Inc. (collectively, "Defendants" or "United"), asserting violations of the

New York Insurance Law (specifically, the NY Anti-Mandatory Mail Order ("AMMO") law), as

well as violations of federal and state antitrust laws. Defendants subsequently removed the

instant action to this Court pursuant to 28 U.S.C. §§ 1441(c)(1) and 1446(b).

      Plaintiffs submitted a request to this Court for a temporary restraining order and

preliminary injunction, and the Court issued an Order to Show Cause on February 13, 2015. A

show cause hearing regarding Plaintiffs' request was held on February 27.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/18/2015

## I.     BACKGROUND[1]

Plaintiff John Doe suffers from the blood disorder hemophilia, which prevents clotting and leaves those who suffer from it susceptible to spontaneous bleeds into their joints and other areas of the body. (*See* Decl. of Joseph A. Murphy ("Murphy Decl.") Ex. C, Aff. of John Doe ("Doe Aff.") ¶ 2.) Mr. Doe is and was enrolled in an employee benefit plan sponsored by his employer, Voyetra Turtle Beach, Inc., and is enrolled in the group health benefit plan administered by Oxford, a subsidiary of Defendant United. (Decl. of Maryann Britto ("Britto Decl.") ¶ 3.) In a September 2013 letter, United advised Mr. Doe that clotting factors and coagulant blood products for bleeding disorders such as his would be moved to United's Specialty Designated Pharmacy Program effective December 1, 2013. (*See* Decl. of Matthew Klein ("Klein Decl.") Ex. B.) Mr. Doe's insurance benefits do not provide out-of-network coverage for outpatient prescription drugs. (Britto Decl. Ex. A-1 at 000018.)

Prior to 2014, Mr. Doe had been receiving his medication from Plaintiff BDRN. BDRN, which stands for Bleeding Disorders Resource Network, specializes in bleeding disorders like hemophilia. (Doe Aff. ¶ 4; Murphy Decl. Ex. D, Aff. of Nelson Escoto ("Escoto Aff.") ¶ 5.) BDRN supplied Mr. Doe with his medication, ancillary supplies, coolers to store his medication when traveling, and a small refrigerator in which to store his medication. (Doe Aff. ¶¶ 5-6.) It also delivered the medicine and ancillary supplies to his home via personal delivery at the date and time specified by Mr. Doe. (Doe Aff. ¶ 7.)

In January 2014, Mr. Doe attempted to have his prescription filled at BDRN and learned that the pharmacy was not part of United's specialty pharmacy network. (Doe Aff. ¶ 8.) BDRN and BDRN Pharmacy are participants in United's retail pharmacy network, but because it was

---

[1] The following facts are taken from Plaintiff's Complaint generally, as well as affidavits and other documents submitted by the parties with their briefs and supporting papers submitted on this matter.

not a member of the specialty pharmacy network, the cost of specialty medications filled by BDRN would not be covered by Mr. Doe's health benefit plan. He filed a complaint with the New York Attorney General, Healthcare Bureau, by letter dated January 31, 2014. (*See* Klein Decl. Ex. C.) United responded to Mr. Doe's complaint by letter dated February 5, 2014. (*See* Klein Decl. Ex. D.) In its letter, United explained that Plaintiff Doe had other alternatives, including at least one in-network specialty pharmacy, Bioscrip, that would deliver his medication by courier and pick up his medical waste—two of the reasons Mr. Doe had stated for his preference of filling his prescriptions at BDRN. (*Id.*) United's letter also explained that Doe's medication could be delivered to a New York Consortium Hemophilia Treatment Center ("HTC"), where it could be stored until it was convenient for him to pick it up. (*Id.*) Mr. Doe utilized Defendant OptumRx, a mail-order specialty pharmacy in United's network, to fill his prescriptions, and encountered several problems, including UPS delays. (*See, e.g.*, Doe Aff. ¶ 15 (alleging OptumRx would not provide loaner refrigerator to store medication); Doe Aff. ¶ 16 (alleging UPS did not deliver package from OptumRx on time in August 2014); Doe Aff. ¶¶ 17-18 (alleging UPS delay of OptumRx package caused Plaintiff to change Christmas Eve plans)).

BDRN itself has also contacted regulators seeking that United be required to admit BDRN into its specialty pharmacy network. Specifically, Plaintiff BDRN filed a complaint with the New York State Department of Financial Services ("DFS") asserting essentially the same allegations and complaints as they assert in this matter. (*See* Klein Decl. Exs. H, I.) United provided an application at some time to BDRN for it to apply to join United's specialty pharmacy network, but it appears that BDRN never applied. (*See* Klein Decl. Ex. I.) No action was taken by DFS regarding BDRN's complaint.

An important component of this case is recent legislation in New York regarding

mandatory mail order provisions for pharmaceuticals. In 2011, an amendment was enacted to the New York Insurance Law that prohibits mandatory mail order of drugs. (Murphy Decl. Ex. E, Aff. of Selig Corman, RPh ¶ 19.) This amendment is commonly known as the Anti-Mandatory Mail Order law, or the AMMO law. The AMMO law provides, in pertinent part:

> Any insurer delivering a group or blanket policy or issuing a group or blanket policy for delivery in this state that provides coverage for prescription drugs shall permit each insured to fill any covered prescription that may be obtained at a network participating mail order or other non-retail pharmacy, at the insured's option, at a network participating non-mail order retail pharmacy provided that the network participating non-mail order retail pharmacy agrees in advance, through a contractual network agreement, to the same reimbursement amount, as well as the same applicable terms and conditions, that the insurer has established for the network participating mail order or other non-retail pharmacy.

N.Y. Ins. Law § 3221(ix)(18).[2] Plaintiff BDRN alleges that the requirements United has put in place for admission into its specialty pharmacy network serve no purpose other than as a barrier to entry into the network for local retail pharmacies. (Escoto Aff. ¶ 11.) These requirements include a requirement that members provide services with geographical coverage in the majority of the United States and accreditation by the Utilization Review Accreditation Commission, commonly known as URAC. (*Id.* ¶¶ 11-12.) Plaintiffs allege that denial of membership for BDRN in the specialty pharmacy network violates the rights of both the pharmacy and its patients under the NY AMMO law.

On February 3, 2015, Plaintiffs commenced this action in New York Supreme Court, Westchester County. (Decl. of Michael H. Bernstein ("Bernstein Decl.") Ex. J.) Plaintiffs also filed an Order to Show Cause seeking a temporary restraining order and preliminary injunctive relief. (Bernstein Decl. Ex. K.) On the same day, Defendants removed the action to this Court. (*See* ECF No. 1.) Plaintiffs re-submitted their application for injunctive relief to this Court on

---

[2] Plaintiffs cite to N.Y. Ins. Law § 3216 in their papers, but § 3216 governs individual policies. Section 3221 covers group policies like the one Mr. Doe is enrolled in.

February 10. This Court originally entered an Order to Show Cause containing a temporary restraining order directing United to "allow BDRN to fill Plaintiff's prescription for medicine as if it is [] participat[ing] in United's Specialty Pharmacy Network for Pharmacy Benefit." (ECF No. 7.) By Memorandum Endorsement, the Court modified its order on February 18, directing Plaintiff Doe to "seek his medication from a participating pharmacy and thus abide by the requirements of his insurance." (ECF No. 11.) The Court modified its Order after receiving a letter from the Defendants requesting that the temporary restraining order be vacated and representing to the Court that Mr. Doe was not at imminent risk of harm because he had non-mail order options for receiving his drugs, contrary to Plaintiff's assertions. (*See* ECF No. 11.)

## II.    STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). In the Second Circuit, a party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52-53 (2d Cir. 2010); *see also Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009).

Where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," such as in this case, that party "must meet [a] more rigorous standard." *Almontaser v. New York City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("[W]e have

required the movant to meet a higher standard where . . . an injunction will alter, rather than maintain, the status quo, . . ."). The moving party must establish a "'clear' or 'substantial' likelihood of success," or show that "extreme or very serious damage" would result in the absence of preliminary relief. *Tom Doherty Assocs.*, 60 F.3d at 34.

### III.   ANALYSIS

"A showing of irreparable harm is essential to the issuance of a preliminary injunction." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995). In order to demonstrate that it will suffer irreparable harm, a party seeking preliminary injunctive relief "must demonstrate that absent a preliminary injunction [it] will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). "[T]he moving party must demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Freedom Holdings*, 408 F.3d at 114.

Plaintiff John Doe alleges that failure to allow BDRN to fill his prescription as if it were a member of United's specialty pharmacy network threatens his health. John Doe's complaints, however, essentially amount to grievances about inconvenience and speculation about future risk. *See, e.g.*, Doe Aff. ¶ 15 (alleging that OptumRx would not provide him with a loaner refrigerator to store his medication); Doe Aff. ¶ 16 (alleging UPS did not deliver a package from OptumRx on time in August 2014); Doe Aff. ¶¶ 17-18 (alleging UPS delay of OptumRx package caused Mr. Doe to change Christmas Eve plans). Plaintiffs have not demonstrated that John Doe's health is in imminent jeopardy or that he will suffer an actual and imminent injury if he does not receive his medication from BDRN, as opposed to another pharmacy.

Relatedly, there has been not been a showing that the use of Bioscrip, or the other options available to Plaintiff under his insurance plan,[3] are inadequate or that Plaintiff's health has been jeopardized due to BDRN's exclusion from the Defendants' specialty pharmacy network. Indeed, Plaintiff appears to have utilized these various alternatives for the last year, receiving his medication from both Bioscrip[4] and OptumRx,[5] without adverse health consequences or problems that rise from the level of inconvenience to actual imminent harm.[6] *Cf. Weight Watchers Intern., Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) (in trademark case where irreparable injury would be presumed, presumption may be defeated by delay in seeking injunction); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) ("[Plaintiff's] delay in seeking injunctive relief . . . forces us to conclude that plaintiffs failed to establish . . . the irreparable harm necessary to authorize injunctive relief."); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("While delay may not warrant the denial of ultimate relief, it may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency upon which the availability of the remedy is predicated." (internal quotation marks omitted)).

These inconveniences to the Plaintiff, while not minor, do not rise to the level of actual and imminent irreparable harm such that a preliminary injunction would be warranted, particularly a mandatory injunction that would disrupt the status quo.

---

[3] Plaintiff appears to have three options available to him through the specialty pharmacy network: ordering from OptumRx, the mail-order pharmacy; picking up his medication at an HTC; or obtaining medication through Bioscrip, which would deliver the drugs to him by courier. *See* Klein Decl. Exs. D, F.

[4] Plaintiff's counsel asserted in his February 13, 2015 letter that Defendants' counsel's letter (also dated February 13) was the first time Plaintiffs had heard about Bioscrip or the HTCs. (*See* ECF No. 11.) However, a spreadsheet provided by Defendants of the claims for pharmaceutical drugs submitted by or on behalf of John Doe suggests that Plaintiff Doe did have knowledge of, and in fact utilized, this option in the past. *See* Klein Decl. Ex. G.

[5] *See* Klein Decl. Ex. G.

[6] Doe suggests that United told him he could not receive his medication from Bioscrip even though Defendants represented to the Court in their February 18, 2015 letter (*See* Pl.'s Reply Mem. at 3). However, it was clarified at the preliminary injunction hearing that Plaintiff Doe initially failed to contact Bioscrip directly and provide a copy of his prescription, and that obtaining his medication from Bioscrip remains an option for Plaintiff.

BDRN alleges that it also suffers irreparable harm independent of any harm to Plaintiff Doe, in the form of lost patients and lost business, which arises as a result of its exclusion from Defendants' specialty pharmacy network. To the extent that BDRN may be injured, however, such injury would be compensable through an award of damages. "Where there is an adequate remedy at law, such as an award of monetary damages, injunctions are unavailable except in extraordinary circumstances." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005)). BDRN has only alleged speculative lost profits and customers; it has not shown a specific "actual and imminent" injury, such that a preliminary injunction might be appropriate. In addition, BDRN has made no allegations of extraordinary circumstances which might merit preliminary injunctive relief in this case, where an award of monetary damages would provide an adequate remedy if BDRN were to prevail. BDRN has not shown it will suffer irreparable harm.

The Plaintiffs' failure to meets their burden for any of the essential elements of the preliminary injunction test—in this case, that Plaintiff will suffer irreparable harm absent an injunction—"is fatal to a preliminary injunction claim." *Greenlight Capital, L.P. v. Apple, Inc.*, No. 13 Civ. 900, 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is denied.


Dated: March 18, 2015                                    SO ORDERED:
      White Plains, New York

                                                        _____
                                                        NELSON S. ROMÁN
                                                        United States District Judge